**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| NINER, INC. | ) | Case No. 17-20796 |
| EIN: 52-2448591 | ) | |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (1) APPROVING POST-PETITION FINANCING AND RELATED LIENS AND ADEQUATE PROTECTION; (2) APPROVING CASH COLLATERAL USE AND RELATED LIENS AND ADEQUATE PROTECTION, AND (3) GRANTING RELATED RELIEF**

Niner, Inc. (the "**Debtor**"), the debtor and debtor-in-possession in the above-captioned case, hereby submits this *Emergency Motion for Entry of Interim and Final Orders (1) Approving Post-Petition Financing and Related Liens and Adequate Protection; (2) Approving Cash Collateral Use and Related Liens and Adequate Protection, and (3) Granting Related Relief* (the "**Motion**"). The Motion is made pursuant to sections 361, 362, 363, 364, and 507 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2081-1, 4001-3, 4001-3APP, and 9013-1 of the Local Bankruptcy Rules (the "**Local Rules**"). The Motion is supported by the *Affidavit of Chris Sugai in Support of Motion Seeking Expedited Entry of First Day Orders* (the "**Sugai Affidavit**"), filed contemporaneously herewith. In further support, the Debtor respectfully states as follows:

**I.   SUMMARY OF RELIEF REQUESTED**

1. The Debtor respectfully requests that the Court enter an interim order, substantially in the form attached hereto, granting, *inter alia*, the following relief, on an interim basis (the "**Interim Order**"):

    a. Approving, on an interim basis, the DIP Financing Agreement (as defined below) and authorizing, but not directing, the Debtor to execute, deliver, and perform the DIP Financing Agreement and to obtain financing during the Interim Period (as defined below) in the amounts set forth in the Budget;

    b. Granting the DIP Lender (defined below), a postpetition lien and security interest, superpriority expense claim, and other benefits set forth in the Interim Order to secure the extension of credit under the proposed DIP Financing Agreement during the Interim Period;

    c.  Authorizing the Debtor to use Cash Collateral (as defined below) and granting the Prepetition Secured Lenders (as defined below) replacement liens as adequate protection for the use of the Cash Collateral and superpriority administrative expense claims pursuant to section 507(b) to the extent that the Debtor's use of Cash Collateral results in any diminution in value of the Prepetition Secured Lenders's interest in the Cash Collateral; and

    d.  Granting the related relief as set forth in the proposed Interim Order.

2.    The Debtor further requests that the Court schedule a final hearing (the "**Final Hearing**"), as early as the Court's schedule will permit, to consider granting the relief requested herein on a final basis and entering a final order substantially in the form that will be filed with the Court in advance of the Final Hearing (the "**Final Order**").

3.    Pursuant to Bankruptcy Rules 4001(b) and (c)(1)(B) and Local Rule 4001-3(2), the Debtor provides the following summary of the essential terms of the DIP Financing Agreement (all capitalized terms used in the summary below and not otherwise defined in this Motion shall have the meanings ascribed to them in the DIP Financing Agreement or the proposed Interim Order, as applicable):

| | |
|---|---|
| **Maximum borrowing available on a final basis:** | DIP Lender agrees to make revolving advances ("**Revolving Loans**") in an aggregate outstanding amount not to exceed at any time the lesser of the following (the "**Revolver Credit Limit**"): (1) $4,000,000 (the "**Maximum Revolver Amount**") or (2) the Borrowing Base (as defined in the DIP Financing Agreement). During the period from December 15, 2017, through February 8, 2018, DIP Lender agrees in its sole discretion to make over advance loans ("**Over Advance Loans**") in an aggregate outstanding amount not to exceed at any time $215,000 (the "**Over Advance Credit Limit**"). DIP Financing Agreement at Sch. B. § 1. |
| **Interim borrowing limit:** | Revolving Loans advanced in an aggregate outstanding amount not to exceed at any time the Revolver Credit Limit. Advances will be made in accordance with the Budget and the terms of the DIP Financing Agreement during the Interim Period. DIP Financing Agreement at Sch. B. § 1. |
| **Borrowing conditions:** | Initial Advance to be funded upon entry of Interim Order. Subsequent Advances funded on the first day of each month in the amounts set forth in the Budget. |

| | |
|---|---|
| **Interest rate:** | Prime plus 6.25% per annum. DIP Financing Agreement at Sch. B. § 2. |
| **Fees, costs and charges paid or payable by Debtor or any other person or entity:** | Origination, continuation and related fees due upon maturity in the aggregate amount of $60,000. Borrower to pay DIP Lender's present and future attorneys' fees and costs. *See* DIP Financing Agreement at Sch. B. § 3; Interim Order ¶ 1.6. |
| **Maturity:** | The earlier of (i) the date on which a sale of all or a material portion of the assets of Borrower is consummated, and (ii) March 31, 2018. *See* DIP Financing Agreement at Sch. B. § 4. |
| **Events of default:** | Customary Events of Default for a post-petition loan agreement. *See* DIP Financing Agreement § 7. Interim Order ¶ 4.1. |
| **Remedies in the event of default:** | Customary remedies for a post-petition loan agreement, including, without limitation, cessation of advances, termination of DIP Financing Agreement, exercise of UCC remedies and other remedies under applicable law. *See* DIP Financing Agreement § 7. |
| **Use of funds limitations:** | Funds to be used for ordinary operations and administrative expenses, subject to the Budget. *See* DIP Financing Agreement § 6.d. |
| **Protections afforded under 11 U.S.C. §§ 363 and 364:** | DIP Lender to receive superpriority claim pursuant to 11 U.S.C. § 364(c)(1) and lien on the DIP Collateral pursuant to 11 U.S.C. §§ 364(c)(2) & (3), subject to existing perfected prior liens and security interests. *See* Interim Order ¶¶ 3.1 and 3.2.

DIP Lender and Junior Lender are granted (i) adequate protection liens in substantially all assets of the Debtor to the extent of any use of Cash Collateral and to the extent of and in the same priority as their pre-petition liens, and (ii) superpriority claims under 11 U.S.C. § 507(b) for any diminution in value of the adequate protection liens. *See* Interim Order ¶ 6. |
| **Line item budget for both the Interim and Final Order** | *See* DIP Financing Agreement at Schedule A. |

| | |
|---|---|
| **periods:** | |
| **Name of each entity with an interest in the cash collateral** | PMC Financial Services Group, LLC ("**Lender**") and West Town Savings Bank ("**Junior Lender**") are the only entities known to have asserted a lien or security interest in the Cash Collateral. Junior Lender's interest in Cash Collateral is subordinate to Lender's interests in accordance with applicable law and express terms of subordination agreement by and among Lender and Junior Lender. |
| **Purposes for the use of cash collateral** | Ordinary course operations and payment of administrative expenses. |
| **The material terms, including duration, of the use of cash collateral** | Subject to the Budget, the Debtor shall be permitted to use Cash Collateral to satisfy the Prepetition Obligations and the Postpetition Obligations as required or provided under the Loan Documents and the Interim Order, and to pay certain actual, necessary expenses incurred by the Estate. *See* Interim Order ¶ 2.1. The anticipated duration of the use of Cash Collateral is through the closing on the contemplated sale. |
| **Any liens, cash payments, or other adequate protection that will be provided to each entity with an interest in the cash collateral** | Lender and Junior Lender will receive adequate protection liens to the extent of the Debtor's use of Cash Collateral and superpriority claims under Bankruptcy Code section 507(b) to the extent of any diminution in value of their collateral resulting from the use of Cash Collateral. *See* Interim Order ¶¶ 3.1 and 6.4. |

4. Pursuant to Bankruptcy Rule 4001(c)(1)(B) and Local Rules 4001-3(a) and 4001-3APP, the Debtor highlights the following additional provisions in the DIP Financing Agreement and proposed Interim Order:

| | |
|---|---|
| **Cross-collateralization:** | None. |
| **Provisions or findings of fact regarding validity, perfection or amount of secured party's lien or debt that bind the estate:** | Debtor stipulates that the DIP Lender holds valid, perfected, unavoidable security interests in substantially all of Debtor's assets subject to only the Permitted Senior Liens, and that the DIP Collateral is Cash Collateral. *See* Interim Order ¶¶ B.1-3., C.5. and 1.5. Debtor's stipulations are binding on the Debtor and the estate, but other |

| | |
|---|---|
| | parties in interest are afforded a challenge period of 60 calendar days from date of entry of the Interim Order. *See* Interim Order ¶ 5.2. |
| **Provisions or finding of fact regarding relative priority of secured party's lien or debt and the lien or debt of a person not party to the stipulation:** | The Postpetition Lien is made junior to all other known liens existing as of the Petition Date in the DIP Collateral. *See* Interim Order ¶ B.3. 3.1, and 6.6. |
| **506(c) waivers:** | The Interim Order does contain a 506(c) waiver. *See* Interim Ordereffective only upon the entry of the Final Order.¶ 5.2<br><br>Under the DIP Financing Agreement, the Debtor covenants not to seek entry of an order under section 506(c) with respect to the Cash Collateral without the DIP Lender's consent, *see* DIP Financing Agreement § 6(g), and the proposed Final Order will likely contain a provision to that effect. |
| **Provisions divesting Debtor of discretion in formulating a plan, administering the estate, or limiting access to the court to seek appropriate relief:** | There are prohibitions against the entry of certain orders adverse to the DIP Lender absent consent or absent payment in full of all Obligations. Among other things, the DIP Lender's commitment will terminate if the Debtor obtains additional debt under Bankruptcy Code section 364 absent the DIP Lender's consent. DIP Financing Agreement §§ 6(e) and 7(i); Interim Order ¶¶ 5.1 and 6.6.<br><br>Debtor shall not use any of the funds from the DIP Facility to fund any Adverse Lender Challenge. DIP Financing Agreement § 1(b) and 6(d); Interim Order ¶ 1.8.1 and 2.1.2. |
| **Releases of liability for creditor's alleged prepetition torts or breaches of contract:** | Debtor stipulates that the Prepetition Obligations are valid, legal and binding and not subject to objection, offset, subordination or other claim or challenge of any nature. *See* Interim Order ¶¶ B.1-3 and 1.5. Debtor's stipulations are binding on the Debtor and the estate, but other parties in interest are afforded a challenge period of 60 calendar days from date of entry of the Interim Order. *See* Interim Order ¶ 5.3. |
| **Waivers of avoidance actions:** | The Interim Order contains a waiver of avoidance actions as to the DIP Lender. *See* DIP Financing Agreement § 1(b) and 6(d); Interim Order ¶¶ |

| | |
|---|---|
| | B.2., B.5., 3.1.1. |
| **Automatic stay relief:** | The Interim Order contains a provision modifying or waiving the automatic stay to implement the Postpetition Financing pursuant to the Loan Documents, but not with respect to the exercise of any right or remedy available upon an Event of Default except as provided herein, (b) to take or permit any Perfection Act, and (c) to assess, charge, advance, deduct, and receive payments with respect to the Postpetition Obligations, and apply such payments to the Postpetition Obligations pursuant to the Loan Documents. Interim Order ¶ 4.3. |
| **Waivers of procedural requirements for foreclosure mandated under applicable non-bankruptcy law:** | None. |
| **Adequate protection provisions that create liens on claims for relief arising under sections 506(c), 544, 545, 547, 548 and 549 of the Bankruptcy Code:** | None. Avoidance Claims and proceeds thereof are expressly excluded from the Postpetition Collateral securing the Postpetition Lien. *See* Interim Order ¶ 3.1.1. |
| **Waivers effective on default or expiration, of the debtor's right to move for a court order pursuant to section 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent:** | None. |
| **Findings of fact on matters extraneous to the approval process:** | None. |

5. As explained in Section V.A.viii, *infra*, the provisions identified above are necessary and appropriate under the circumstances and the product of extensive arms' length negotiations.

## II. INTRODUCTION

6. This Motion seeks authority to borrow up to an aggregate amount of $4,000,000 in postpetition financing (the "**DIP Financing**") pursuant to (i) that certain *DIP PostPetition Financing Addendum* (the "**DIP Financing Agreement**," a copy of which is attached hereto as

**Exhibit 1**), dated as of November 27, 2017, by and between (a) the Debtor, as borrower, and (b) PMC Financial Services Group, LLC ("**DIP Lender**"), as lender. The Debtor seeks authority, on an expedited basis, to borrow in accordance with the Budget (as defined below) on an interim basis (the "**Interim DIP Financing**") until such time as the Court enters a final order with respect to this Motion (the "**Interim Period**"). If approved by the Court, the DIP Financing Agreement will grant the DIP Lender, a lien on in all DIP Collateral, including certain prepetition and postpetition Collateral as specified, that is property of the Estate (the "**DIP Collateral**") and a superpriority claim pursuant to section 364(c)(1) and (2) of the Bankruptcy Code.

7. The Debtor also seeks authority to use the Cash Collateral (as defined below) of the DIP Lender and Junior Lender (as defined below). The Debtor seeks to grant the DIP Lender and Junior Lender adequate protection liens in substantially all of the Debtor's assets to protect against any diminution in their respective interests in the Cash Collateral, as well as a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code to the extent that the adequate protection liens prove inadequate.

8. The DIP Financing and the Interim DIP Financing are critical to the Debtor's operations and ability to fund this chapter 11 case. Specifically, the Debtor has an immediate need for the Interim DIP Financing, among other things, (i) for ordinary course operations, such as funding payroll for employees, fulfilling orders for customized products for current and potential customers for the upcoming spring/summer season, and paying necessary vendors who are critical to ordinary course operations, and (ii) to pay administrative expenses, including professionals' fees and United States Trustee fees in accordance with the budget (the "**Budget**") attached to the DIP Financing Agreement. Without immediate access to the Interim DIP Financing, the Debtor's ability to operate, provide goods and services to its customers, pay its employees, and preserve the value of the business will be immediately and irreparably jeopardized, resulting in significant harm to Niner's estate and creditors. Such funding is necessary to maintain the going concern value of the Debtor and allow for a successful sale.

### III. JURISDICTION AND VENUE

9. The Court has jurisdiction over the Debtor, its estate, and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 4001 and 6003.

### IV. BACKGROUND

A. **General Background**

10. On November 27, 2017 (the "**Petition Date**"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues in possession of its property and manages its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner, and no official committee has been established in this case.

11. Founded in 2005, the Debtor sells complete bikes, frames, and parts through a domestic network of approximately 400 independent bike dealers and in approximately 35 countries. International sales account for approximately 30% of the Company's sales volume, with Europe alone representing approximately 13% of the Company's total sales. The Debtor is a Colorado corporation, managed from its headquarters in Fort Collins, Colorado.

12. A detailed background on the Debtor, its business, and the events leading to the commencement of this chapter 11 case is set forth in the Sugai Affidavit.

### B. The Debtor's Existing Secured Debt

13. Prior to the Petition Date, Debtor and DIP Lender were parties to that certain Loan and Security Agreement, dated as of April 23, 2012, (as amended, modified, supplemented, and restated, as of the Petition Date, the "**Prepetition Loan Agreement**") and other related documents (as each amended, modified, supplemented, and restated, as of the Petition Date, collectively and together with the Prepetition Loan Agreement, the "**Prepetition Loan Documents**").

14. As of the Petition Date, the Debtor was indebted to the DIP Lender in the aggregate amount of not less than $2,639,635.29 plus accrued and unpaid interest, costs fees, and charges. Pursuant to the Prepetition Loan Documents, the DIP Lender has a first priority lien (the "**Prepetition Lien**") on substantially all assets of the Debtor, ("**Prepetition DIP Collateral**").

15. In addition, there is one other creditor asserting a secured claim against the Debtor. As of the Petition Date, the Debtor was indebted to West Town Savings Bank also doing business as West Town Bank & Trust ("**Junior Lender**") in the aggregate amount of not less than $3,054,000.00 plus accrued and unpaid interest and fees. The Junior Lender asserts a first priority lien on certain enumerated Pre-Petition Collateral, set forth on Exhibit A to the Interim Order, which includes equipment, general intangibles and intellectual property (the "**Junior Lender First Priority Collateral**"). Junior Lender's interest in Cash Collateral proposed to be used pursuant to the Budget is subordinate to Lender's interests therein in accordance with applicable law and express terms of subordination agreement by and among Lender and Junior Lender.

### C. The Debtor's Liquidity Issues, Efforts to Obtain Alternative Financing, and DIP Financing Negotiations

16. As set forth in the Budget, due to the cyclical nature of the Debtor's business and operations, the Debtor is need of postpetition financing in order to continue as a going concern. Put simply, the Debtor needs additional financing to pay its projected expenses during the next thirteen weeks in order to continue its operations. The Debtor firmly believes that it is in the best interests of creditors and the estate for the Debtor to sell substantially all of its assets under chapter 11 pursuant to a competitive bidding and auction process. The DIP Financing will sustain the Debtor for approximately a thirteen-week period, during which the Debtor intends to sell its assets as a going concern.

17.     In addition to negotiating with the DIP Lender, the Debtor consulted with its financial advisors and attorneys about potential providers of postpetition financing on a junior secured basis in the months leading up to the Petition Date. Based upon its current financial status, Niner is informed that no lenders would be willing to provide financing subject to the liens of Lender and Junior Lender. This feedback was consistent with the response the Debtor has received from the marketplace in its recent capital raising efforts.

18.     In light of the unwillingness of other parties to provide financing on equal or better terms, the Debtor focused on negotiations with the DIP Lender. The DIP Financing Agreement was negotiated through a good faith, arms' length process. The Debtor and DIP Lender heavily negotiated over the amount and terms of the DIP Financing Agreement, exchanging numerous proposals. On or about November 27, 2017, the parties reached an agreement on terms and entered into the DIP Financing Agreement.

## V.     BASIS FOR RELIEF

### A.     DIP Financing

#### i.     Legal Standard

19.     "It is given that most successful reorganizations require the debtor-in-possession to obtain new financing simultaneously with or soon after the commencement of the Chapter 11 case." *In re Ames Department Stores, Inc.*, 115 B.R. 34, 36 (Bankr. S.D.N.Y. 1990). Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, then the court may authorize the debtor to obtain credit or incur debt (i) with priority over any and all administrative expenses as specified in sections 503(b) or 507(b) of the Bankruptcy Code, (ii) secured by a lien on property of the estate that is not otherwise subject to a lien, or (iii) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

20.     Assuming the statutory predicates for postpetition financing have been met, courts generally defer to a debtor's business judgment so long as the financing does not contain terms that the leverage the bankruptcy process for the benefit of a third party over the estate and does not unfairly cede control of the reorganization process to a single non-debtor party. *E.g.*, *In re Ames*, 115 B.R. at 40; *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010). Similarly, this Court has previously explained the role of a debtor's business judgment in decisions to obtain postpetition financing as follows:

> As a debtor-in-possession, Simpco has authority to operate the business. The authority to operate that business necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters. The business of this debtor-in-possession includes oil and gas drilling operations. Simpco's best business judgment indicates these drilling operations are necessary and reasonable for the benefit of the estate. The discretion to act with regard to business planning activities is at the heart of the debtor's power. In exercising Simpco's business judgment of conducting its drilling operations, it has found it necessary to obtain

loans to make these endeavors possible.  This is in accordance with the exercise of its sound business discretion.

*In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) (citations omitted).  This Court further noted that "business judgments should be left to the board room and not to this Court." *Id.*

### ii. The Debtor Has an Immediate Need for Financing

21. As explained above and in the Sugai Affidavit, unless the Debtor is authorized to obtain postpetition financing, the Debtor will not have sufficient available sources of working capital to operate in the ordinary course of business, provide goods and services to its customers, pay its employees, and preserve the value of the business.  The Debtor's ability to maintain the going concern value of the Debtor is essential to the Debtor's ability consummate a successful sale.

### iii. The DIP Financing Will Benefit the Estate

22. The proposed DIP Financing will allow the Debtor to proceed with its efforts to maximize value and successfully sell its assets as a going concern in this chapter 11 case.  Through the Chapter 11 Case, the Debtor seeks to sell substantially all its assets before the end of January 2018 in accordance with 11 U.S.C. § 363 in an effort to recapitalize the Debtor and continue its growth.  With a recapitalized balance sheet, the Debtor will be able to, among other things, hire the engineers and product managers necessary to design bikes for women, to begin offering kid's models, to create electric mountain bikes, and continue to increase models with different wheel sizes and continue to engineer new and other additional products and models.  The Debtor also believes that by enlarging their omni-channel footprint they will be able to increase brand awareness and engagement, ultimately leading to substantial revenue growth.  Without adequate financing, the Debtor would almost certainly need to cease operations and liquidate, which would irreparably harm the value that can be realized for the benefit of creditors and the Debtor's estate.

### iv. No Superior Financing Alternative Available

23. As explained above and in the Sugai Affidavit, the Debtor pursued alternative potential providers of postpetition financing in the months leading up to the Petition Date.  Based on, among other things, the nature of the Debtor's assets, no party expressed interest in providing financing on a secured or unsecured basis.  Under the circumstances, the DIP Financing is the best and only option available to the Debtor.

### v. Adequacy of Budget

24. The Debtor, with the assistance of its professionals and advisors, has compiled the Budget based on all historical costs of operation, reasonable projections regarding future operations, and the added costs of operating under chapter 11 of the Bankruptcy Code, including professionals' fees.  The Debtor submits that the Budget is adequate based on all available information.

      vi.      **The DIP Financing Represents a Reasonable Exercise of the Debtor's Business Judgment**

25.      After appropriate investigation and analysis and given the exigencies associated with the Debtor's bankruptcy filing, the Debtor's management has concluded that the DIP Financing is the best and only available option in the circumstances of this case. Bankruptcy courts routinely defer to the debtor's business judgment with respect to such matters, as "[m]ore exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

26.      Here, the Debtor has exercised sound business judgment in determining that the DIP Financing is appropriate, and the Debtor has satisfied the legal prerequisites to borrow under the DIP Financing Agreement. The terms of the DIP Financing Agreement are fair and reasonable and in the best interests of the Debtor's estate. Nor does the DIP Financing unfairly leverage the bankruptcy process in favor of the DIP Lender or cede control of the reorganization to the DIP Lender.

      vii.      **The DIP Financing Was Negotiated in Good Faith**

27.      As set forth in the Sugai Affidavit, the DIP Financing Agreement was negotiated in good faith and at arms' length between the Debtor and the DIP Lender, with all parties represented by independent counsel. As a result of these negotiations, the Debtor was able to include significant improvements to the initial terms proposed by the DIP Lender, including a material increase in the aggregate amount of financing available and the timing of said financing. Accordingly, the Debtor believes that any credit extended under the terms of the Interim Order is extended in good faith by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code.

      viii.      **Justification for Certain Provisions in the Proposed Interim Order and Final Order**

28.      As noted above, the proposed Interim Order, Final Order, and DIP Financing Agreement contains a provision seeking a Section 506(c) waiver, and other certain provisions that appear in the Appendix at Local Rule 4001-3APP. Each such provision was specifically required by the DIP Lender and the DIP Lender indicated that they would not provide the DIP Financing absent such provisions. The DIP Financing provided by the DIP Lender represents the only viable source of financing for the Debtor and, given the material benefits of the DIP Financing, without which the Debtor would not be able to pursue its reorganization, the Debtor believes that these provisions are necessary and justified. Indeed, by obtaining the proposed financing from the DIP Lender, the Debtor will have the best opportunity to preserve and maximize value by continuing its operations through consummation of a sale, and paying the operating and restructuring costs and expenses projected to be incurred in the Budget.

29. The Debtor negotiated the terms of the DIP Financing in good faith and obtained the best possible deal that it could under the circumstances. As indicated above, the Debtor was able to obtain significant improvements to the initial terms of the proposed DIP Financing proposed by the DIP Lender that will benefit the Debtor and its estate. As such, the Debtor respectfully submits that the DIP Lender provided fair consideration for the DIP Financing and the terms highlighted above.

30. For these reasons, the Debtor respectfully asserts that the inclusion of each of the highlighted provisions is justified under the circumstances and should be approved.

**B.    Use of Cash Collateral**

31. In addition to seeking approval of the DIP Financing Agreement, the Debtor is also requesting interim and final orders authorizing the use of cash collateral, for the purposes and in the amounts set forth in the Budget. The cash collateral consists of the proceeds of the DIP Collateral (the "**Cash Collateral**"), including the proceeds of the Prepetition DIP Collateral, belonging to the Debtor as of the Petition Date.

32. Section 363(c)(2) of the Bankruptcy Code provides that:

> The [debtor in possession] may not use, sell, or lease cash collateral . . . unless—(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 362(c)(2). Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court, with or without a final hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

33. The DIP Lender and the Junior Lender are the only parties known to hold or assert a lien in the Cash Collateral. The DIP Lender has consented to the use of Cash Collateral. The Junior Lender has not yet indicated whether it will consent to the Debtor's use of the Cash Collateral, however, Junior Lender's interest in Cash Collateral is subordinate to Lender's interest and the Debtor has provided adequate protection for any diminution in value of the Cash Collateral or other collateral subject to the Prepetition Liens. Accordingly, the Interim Order provides for granting the DIP Lender and the Junior Lender adequate protection liens in substantially all assets of the Debtor in the same priority and extent as the existing Prepetition Liens. *See* Interim Order ¶ 6(b). Furthermore, in the event that there is any diminution in the value of the DIP Lender's and the Junior Lender's respective interests in collateral resulting from the use of Cash Collateral, the Debtor the Interim Order provides for granting superpriority administrative expense claims pursuant to section 507(b) of the Bankruptcy Code.

34. Accordingly, the Debtor requests that the Court authorize the Debtor's use of Cash Collateral, subject to the Budget.

### VI. SATISFACTION OF RULE 4001(c)(2)

35. Bankruptcy Rule 4001(c)(2) provides that within the first fourteen (14) days after service of a motion for postpetition financing, the court "may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." FED. R. BANKR. P. 4001(c)(2). As described above and in the Sugai Affidavit, the Debtor will likely have to cease operations and liquidate if the relief requested in this Motion is not granted. Accordingly, entry of the Interim Order is necessary to avoid immediate and irreparable harm to the estate pending entry of the Final Order.

### VII. PROPOSED FINAL HEARING AND NOTICE PROCEDURES

36. The Debtor proposes that it serve a copy of the Interim Order within three business days of its entry, together with a notice (in conformity with Local Rule 9013-1) of the Final Hearing on the Motion, by overnight mail, facsimile, email, or hand delivery, on the Notice Parties (as defined below) and on any party that files a request for notice pursuant to Rule 2002 of the Bankruptcy Rules.

37. The Debtor requests that the Court set an objection deadline for objections to the Final Order, which deadline will be included in the notice referenced above.

### VIII. NOTICE

38. In compliance with Local Rule 2081-1(b), notice of this Motion and a copy of this Motion will be provided to (a) the Office of the United States Trustee; (b) the twenty (20) largest unsecured creditors; (c) all parties who are known by the Debtor to assert liens with respect to the Purchased Assets, if any; (d) the Purchaser and its counsel; and (e) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure. (collectively, the "**Notice Parties**"). The Debtor respectfully submits that such notice is sufficient, and request that the Court find that no further notice of the relief requested herein is required.

**WHEREFORE**, the Debtor respectfully requests that the Court (i) enter the Interim Order; (ii) schedule the Final Hearing and approve the Debtor's proposed notice procedures with respect thereto; (iii) following the Final Hearing, enter a Final Order granting the relief requested herein; and (iv) grant such other relief as the Court deems just and proper.

Dated this 27th day of November, 2017.

                MARKUS WILLIAMS YOUNG &
                ZIMMERMANN  LLC

*/s/ Matthew T. Faga*
James T. Markus, #25065
Matthew T. Faga, #41132
1700 Lincoln Street, Suite 4550
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
mfaga@markuswilliams.com

*Counsel for Debtor-in-Possession*